UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC PAUL MCNEIL | CIVIL ACTION |
| VERSUS | |
| ANTHONY TODD CARUSO ET AL. | NO.: 17-01688-BAJ-RLB |

RULING AND ORDER

Before the Court is the **Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 7)** by Defendant Jimmy Watson ("Watson"), the **Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 8)** by Defendants Anthony Caruso ("Caruso") and Defendant Jan McDonald ("McDonald") the **Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 9)** by Defendant the City of Walker, Louisiana. Plaintiff has not filed a response. For the reasons stated herein, the three motions are **GRANTED**.

I. BACKGROUND

In February of 2015 and May of 2015, Plaintiff received two traffic citations from the Walker Police Department, *to wit*: speeding and improper lane usage, in violation of Title 32 of the Louisiana Revised Statutes, Sections 64 and 79, respectively. (Doc. 1 at p. 2). Plaintiff's case was tried in the Mayor's Court of Walker.[1] (*Id.*) One of Plaintiff's primary claims is that the Mayor's Court did not have jurisdiction to try the case because municipal courts only have jurisdiction over violations of municipal ordinances. (Doc. 1 at pp. 2-3). Plaintiff also claims that the

---

[1] The "Mayor's Court" refers to the municipal court in Walker, Louisiana.

officers pulled him over for the purpose of harassing him for speaking out about their corrupt activities in Livingston Parish. (*Id.*)

With respect to the trial itself, Plaintiff allegedly filed several motions to compel discovery of the arresting officers' dashboard camera and body camera footage. He alleges that such motions were denied by Caruso, the Magistrate in Mayor's Court. (Doc. 1 at p. 3). Plaintiff allegedly requested witness subpoenas for his trial, which McDonald, the Clerk of Court, never issued. (Id.) Finally, Plaintiff alleges that he filed his own dashboard camera videos of the incident with the clerk's office, but that McDonald allegedly could not find them on the day of trial. (*Id.* at 3.)

On December 15, 2015, Plaintiff was convicted at trial before Magistrate Caruso for violations of La. R.S. 32:64, 32:79, and 32:898, which prohibit speeding, improper lane usage, and driving without insurance, and fined $1720. (Doc. 1 at p. 4). Plaintiff claims that he immediately filed an appeal in the 21st Judicial District of Louisiana. (*Id.*) However, Plaintiff claims that he was never served a notice regarding the date of his new trial. (*Id.*) As such, Plaintiff did not appear for trial on August 25, 2016 and his appeal was dismissed. (*Id.*) Plaintiff alleges that he thereafter appeared before Magistrate Caruso on December 6, 2016, the date on which the $1720 fine was due. (*Id.*) Plaintiff did not provide payment at that time. (*Id.*) Plaintiff alleges that Magistrate Caruso issued a warrant for Plaintiff's arrest for failure to appear, even though Plaintiff was present at the hearing. Magistrate Caruso allegedly did so because Plaintiff was running for the office of parish sheriff, and that he captured the illegal acts of the Walker Police on video, and filed a federal lawsuit against them.

2

(*Id.* at 7) Plaintiff was arrested on December 14, 2016 and spent five months and one day in jail. (*Id.* at 7).

Plaintiff filed suit against Magistrate Caruso, McDonald, Mayor Watson, and the City of Walker. Plaintiff claims that Defendants violated his First, Fourth, and Fourteenth Amendment rights under the United States Constitution and are also liable for malicious prosecution and abuse of process. (*Id.* at 6–7).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*) 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing *Twombly*) 550 U.S. at 556). Hence, a complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

3

## III. DISCUSSION

### A. 42 U.S.C. § 1983 Claims

Plaintiff claims that Defendants violated his First, Fourth, and Fourteenth Amendment rights under the United States Constitution. The Court addresses each Defendant in turn.

#### 1. *Mayor Watson*

Plaintiff asserts that Mayor Watson, as Mayor, possesses final authority over the policies, procedures, customs, practices, and operations of the City of Walker. (Doc. 1 at p. 2). Plaintiff claims that Mayor Watson is therefore liable for his ratification and endorsement of the conduct of the other Defendants in this action. (*Id.* at p. 8). Mayor Watson seeks to dismiss Plaintiff's claims against him.

Title 42 U.S.C. §1983 holds a supervisory official liable only to the extent that "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy. See *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Id.* at 581.

A plaintiff may also allege that the supervisory official failed to train or supervise municipal employees, but "must show that '(1) the supervisor either failed

4

to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.' " *Gates*, 537 F.3d at 435 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). In all but the most exceptional of circumstances, a failure-to-train claim requires a pattern of similar occurrences. See *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Even construing *pro se* Plaintiff's claims liberally, the Court finds that Plaintiff has failed to state a claim against Mayor Watson. He is not alleged to have been personally involved in Plaintiff's arrest or court proceedings. Plaintiff also does not cite a custom, policy, or practice, implemented by Mayor Watson. Finally, a single incident of police or judicial misconduct on its own is insufficient to state a plausible claim for failure to train. See *Connick*, 563 at 62. Accordingly, the §1983 claims against Mayor Watson are dismissed.

   2.   *City of Walker*

Plaintiff seems to claim that the City of Walker is also responsible for the other Defendants' actions in this matter, alleging that the city was "at all times material hereto in authority of the Walker Police Department and their policies, procedures, customs, and practices." (Doc. 1 at p. 1). Municipalities may not be held vicariously liable for the actions of their employees. *Hudspeth v. City of Shreveport*, 2006 WL 37474466, at *19 (W.D. La Dec. 18 2006) (*citing Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 694 (1978). However, a municipality may be held liable if its execution of policies or customs inflicts the injury. *Id.* A plaintiff

5

must show that (1) a municipality adopted a policy with deliberate indifference to its known or obvious consequences and (2) that the municipality was the moving force behind the constitutional violation. *Id.* An "official policy" is either (1) a policy that is officially adopted by the municipality's lawmakers or (2) a persistent widespread practice of city employees which is so common as to constitute a custom that fairly represents municipal policy. *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 92 (5th Cir. 1992). Plaintiff has not alleged any facts to suggest that the City of Walker adopted either an official policy or a widespread practice that would violate Plaintiff's constitutional rights. Even taking Plaintiff's allegations as true, that Walker Police Department officials arrested Plaintiff without authority and that the Mayor's Court did not afford Plaintiff due process, there is no indication in the complaint that such conduct was the result of an official policy or widespread practice. Accordingly, Plaintiff's §1983 claims against the City of Walker are dismissed.

### 3. *Magistrate Caruso*

A judge's actions are protected by absolute judicial immunity, which is overcome in only two scenarios: (a) where the actions are "not taken in the judge's judicial capacity" or (b) where they are "taken in the complete absence of all jurisdiction." *Morrison v. Walker*, 704 Fed. Appx. 369 (5th Cir. 2017) (citing *Mireles v. Waco*, 502 U.S. 9, 11–12, (1991)). *Pierson v. Ray*, 386 U.S. 537, 553 (1967) (applying judicial immunity to a municipal police justice). It appears to be undisputed that Magistrate Caruso was acting within his judicial capacity during the court proceedings involving Plaintiff. The question remains whether Magistrate

6

Caruso's actions were taken in the complete absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). An example of an "acting in the complete absence of jurisdiction" scenario is if a probate judge were to preside over a criminal case. *Id.* The judge would then improperly be acting in the complete absence of jurisdiction. *Id.* The Supreme Court has also instructed that "the scope of [a] judge's jurisdiction must be construed broadly where the issue is immunity of the judge." *Id.* at n. 7 (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Allegations of bad faith or malice cannot overcome judicial immunity. *Mireless v. Waco*, 502 U.S. 9, 11 (1991).

Plaintiff alleges that Magistrate Caruso did not have jurisdiction over his case because Plaintiff was arrested for violations of the Louisiana Revised Statues. Plaintiff asserts that the Mayor's Court only has jurisdiction over violations of municipal ordinances. La. R.S. 33:441 ("[T]here shall be a mayor's court in the municipality, with jurisdiction over all violations of municipal ordinances). Plaintiff overlooks the fact that the City of Walker adopted Title 32 of the Louisiana Revised Statutes verbatim into its Code of Ordinances, indicating that the Mayor's Court possessed jurisdiction over the case. WALKER, LA., CODE art. I, §12-1 (2003). Moreover, La. R.S. 32:41 empowers municipal authorities to adopt ordinances to enforce motor vehicle and traffic regulations. Accordingly, Plaintiff has not met the "clear absence of all jurisdiction" element necessary to preclude the application of judicial immunity. *Stump*, 435 U.S. at 350. Magistrate Caruso is entitled to judicial immunity from suit. As such, Plaintiff's § 1983 claims against Magistrate Caruso must be dismissed.

### *4. Court Clerk*

The Court finds *sua sponte* that the *Parratt/Hudson* doctrine bars Plaintiff's §1983 Fourteenth Amendment due process claim.[2] *Parratt/Hudson* provides that a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy. *Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir.1991). The Supreme Court has confirmed that the doctrine applies to a deprivation of liberty interests. *Lexing v. Edwards*, 2018 WL 2350650, No. 17-1092 at *13 (W.D. La. Apr. 30, 2018) (citing *Zinermon v. Burch*, 494 U.S. 113, 128-32 (1990). The purpose of the doctrine is "to protect the state from liability for failing to provide pre-deprivation process in situations where it cannot anticipate the need for such process." *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

Plaintiff alleges that McDonald failed to issue subpoenas, properly file evidence, and accurately record that Plaintiff was present at a court hearing. It is unclear from the Complaint whether Plaintiff alleges that McDonald's actions were merely mistakes or completed at the direction of Magistrate Caruso. In either scenario, *Parratt/Hudson* bars Plaintiff's §1983 claim. First, the law is clear that Plaintiff is bringing a procedural due process claim. At most, Plaintiff appears to allege that McDonald acted at the direction of a biased judge. The Fifth Circuit has held that the right to an impartial judge is a matter of procedural, not substantive, due process. *Holloway v. Walker*, 784 F.2d 1287, 1293 (5th Cir. 1986). Second, the

---

[2] The doctrine is derived from two Supreme Court cases that limited the scope of §1983 claims: *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984).

8

acts which Plaintiff complains of exemplify the "random and unauthorized" deprivations which *Parratt/Hudson* was meant to address. Actions which are contrary to or outside an official state policy are random or unauthorized. *Brooks v. George County Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). If McDonald's actions were merely mistakes, then they could not have been conducted in accordance with any policy or procedure. If, alternatively, Plaintiff is alleging that McDonald acted at the direction of Magistrate Caruso, her actions may still be defined as unauthorized.[3] *See Holloway*, 784 F.2d at 1292 (holding that the alleged illegal and unauthorized acts of a judge are not the result of an established state procedure). Plaintiff does not allege that McDonald's actions were common practice in municipal court.

Moreover, Louisiana provides adequate post-deprivation remedies to Plaintiff. Plaintiff was entitled to, and did, appeal his ruling to the 19th Judicial District. *See Holloway*, 784 F.2d at 1292-93 (holding that the Texas court system provided an adequate post-deprivation remedy through the right of appeal to restore any wrongfully taken property to its owner). Plaintiff alleges no procedural defects in Louisiana's appeal procedure. As such, *Parratt/Hudson* entitles McDonald to the dismissal of Plaintiff's §1983 Due Process claim.

---

[3] Plaintiff does not specifically allege that McDonald acted at the direction of Magistrate Caruso. Nor does Plaintiff assert that McDonald acted maliciously on her own. However, given that Plaintiff seems to assert that Magistrate Caruso had a malicious and retaliatory motive for issuing a warrant for his arrest and that he was imprisoned as the result of some sort of governmental conspiracy, Plaintiff may be implying that the McDonald acted pursuant to Magistrate Caruso's orders. (Doc. 1 at p. 7).

Finally, to the extent that Plaintiff brings First, Fourth, and Fourteenth Amendment claims, by implying that McDonald acted purposefully at the direction of Magistrate Caruso, the Court also concludes that McDonald is entitled to absolute immunity. Court clerks "have absolute immunity ... for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981). *Burnett v. Denman*, 368 F. App'x 603, 604 (5th Cir. 2010). Accordingly, Plaintiff's §1983 claims against McDonald are dismissed.

### B. State Law Malicious Prosecution

Defendants seek the dismissal of Plaintiff's malicious prosecutions claims. To prevail on a malicious prosecution claim, a plaintiff must prove (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiffs. *James v. Woods*, 899 F.3d 404, 408 (5th Cir. 2018). Plaintiff appears to assert a malicious prosecution claim regarding his conviction on traffic violations, which eventually resulted in a five month prison sentence. (Doc. 1 at p. 7). However, Plaintiff does not allege that the state court proceedings against him were terminated in his favor. As such, Plaintiff fails to state a claim for malicious prosecution against the all Defendants in this matter, and such claims must be dismissed.

C.  **State Law Abuse of Process**

To bring a cause of action for abuse of process under Louisiana state law, a plaintiff must prove (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding. *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990). "An ulterior purpose exists when the defendant acted out of an ulterior motive that was improper or malicious, and plaintiff must show, for example, that defendant acted out of spite or hate, or to procure some unfair advantage." *Wilcon, Inc. v. Travelers Indem. Co.*, 654 F.2d 976, 984 (5th Cir. 1981). The tort must involve the malicious use of legal process after a process has been instituted. *Id.*

   1.  *Magistrate Caruso*

Magistrate Caruso is entitled to judicial immunity against Plaintiff's state law claims. Under Louisiana law, to overcome judicial immunity, a plaintiff must allege that a judge is (1) acting beyond his jurisdiction and (2) acting with malice or corruption. *Nalls v. La Salle*, 2013 WL 2459456, at *2 (M.D. La. June 6, 2013). "The Louisiana jurisprudence on judicial immunity mirrors the federal doctrine." *Id.* (quoting Moore v. Taylor, 541 So.2d 378, 381 (La.App.2d Cir.1989)). As stated previously, Plaintiff has not shown that Magistrate Caruso acted beyond his jurisdiction. He is therefore entitled to judicial immunity

   2.  *Clerk of Court*

Plaintiff alleges that McDonald failed to distribute witness subpoenas for his trial, lost video evidence that Plaintiff submitted for his trial, prepared certified court minutes showing that Plaintiff had failed to appear in a hearing before

11

Magistrate Caruso, even though he was present in court on that day. (Doc. 1 at p. 3-4). However, Plaintiff does not allege any facts indicating that McDonald had an ulterior motive in taking any of these actions. While he alleges that Magistrate Caruso issued an arrest warrant because he was biased against him, he makes no such allegation against McDonald. The most that can be inferred from the complaint is that McDonald acted at the direction of Magistrate Caruso, and in this situation, she would be entitled to judicial immunity. *Johnson v. Foti*, 249 So.3d 945, 959 (La. App. 4 Cir. 7/16/91) (holding that court clerks receive immunity when performing judicial functions, including those delegated from the judge).

### 3. *Mayor Watson and the City of Walker*

As previously noted, Plaintiff has either failed to state a claim for abuse of process against McDonald, or she is judicially immune from suit. As such, neither Mayor Watson nor the City of Walker may be held vicariously liable for the actions of the McDonald for Plaintiff's alleged abuse of process claim. Morever, because Magistrate Caruso is judicially immune from Plaintiff's abuse of process claim, it follows that neither Mayor Watson nor the City of Walker can be held vicariously liability of any abuse of process claims stemming from Magistrate Caruso's actions. *McCoy v. City of Monroe*, 747 So.2d 1234, 1241 (La. App. 2 Cir. 12/8/99) ("Logic. . . dictates that if the judge would not be liable for his judicial actions, no other entity would have vicarious liability as a result of those actions.").

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 7)**, the **Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 8),** and the **Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 9)** are **GRANTED.**

Baton Rouge, Louisiana, this 28th day of March, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**